# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

| | |
|---|---|
| RETRACTABLE TECHNOLOGIES, INC., et al. § § § | |
| v. § | Case No. 2:08-CV-16-LED-RSP |
| § § | |
| BECTON, DICKINSON AND CO. § | |

## MEMORANDUM ORDER

Plaintiff Retractable Technologies, Inc. ("RTI") alleges violations of the Sherman and Clayton Acts, violations of the Texas Antitrust Act, false advertising in violation of the Lanham Act, product disparagement, tortious interference with prospective contract or business relations, and unfair competition by Defendant Becton, Dickinson and Company ("BD"). (Dkt. No. 73.) Before the Court is BD's Amended Motion to Exclude or Limit the Report and Testimony of Plaintiff's Expert James Robert "Bob" Yancy. (Dkt. No. 169, filed January 11, 2012.)

## APPLICABLE LAW

An expert witness may provide opinion testimony if "(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702.

Rule 702 requires a district court to make a preliminary determination, when requested, as to whether the requirements of the rule are satisfied with regard to a particular expert's proposed testimony. *See Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 149 (1999); *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 592-93 (1993). District courts are accorded broad discretion in making Rule 702 determinations of admissibility. *Kumho Tire*, 526 U.S. at 152

("the trial judge must have considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable"). Although the Fifth Circuit and other courts have identified various factors that the district court may consider in determining whether an expert's testimony should be admitted, the nature of the factors that are appropriate for the court to consider is dictated by the ultimate inquiry—whether the expert's testimony is sufficiently reliable and relevant to be helpful to the finder of fact and thus to warrant admission at trial. *United States v. Valencia*, 600 F.3d 389, 424 (5th Cir. 2010).

Importantly, in a jury trial setting, the Court's role under *Daubert* is not to weigh the expert testimony to the point of supplanting the jury's fact-finding role; instead, the Court's role is limited to that of a gatekeeper, ensuring that the evidence in dispute is at least sufficiently reliable and relevant to the issue before the jury that it is appropriate for the jury's consideration. *See Micro Chem., Inc. v. Lextron, Inc.*, 317 F.3d 1387, 1391-92 (Fed. Cir. 2003) (applying Fifth Circuit law) ("When, as here, the parties' experts rely on conflicting sets of facts, it is not the role of the trial court to evaluate the correctness of facts underlying one expert's testimony."); *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 249-50 (5th Cir. 2002) ("'[t]he trial court's role as gatekeeper [under Daubert] is not intended to serve as a replacement for the adversary system.' . . . Thus, while exercising its role as a gate-keeper, a trial court must take care not to transform a *Daubert* hearing into a trial on the merits," quoting Fed. R. Evid. 702 advisory committee note). As the Supreme Court explained in *Daubert*, 509 U.S. at 596, "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *See Mathis v. Exxon Corp.*, 302 F.3d 448, 461 (5th Cir. 2002).

## DISCUSSION

RTI proposes to call Bob Yancy "as an expert regarding the healthcare supply chain based on his industry knowledge of Group Purchasing Organizations ('GPOs') and their role within healthcare supply sales." (Resp. at 1.) Mr. Yancy will likely offer general testimony about the role and purpose of GPOs in the healthcare supply chain, and explain the effects of different GPO contracting practices. BD objects to Mr. Yancy's proposed testimony on several grounds.

1. BD objects to Mr. Yancy's proposed testimony because the testimony does not relate to BD, RTI, needles, syringes, or IV catheters, and therefore should be excluded as not relevant. The Court has reviewed Mr. Yancy's report and is persuaded that general testimony regarding GPOs and the operation of the healthcare supply chain is likely to be relevant and helpful to the jury.

In a similar vein, BD argues that Mr. Yancy's personal experience in the supply chain has been limited to the "capital equipment" segment (such as ultrasound machines and CT scanners), and therefore his experience and opinions do not apply to the "consumables" segment (needles, syringes, and IV catheters, etc.) of the supply chain at issue in this case. However, the evidence suggests that GPOs contract with suppliers and members in both segments simultaneously, and BD does not point to any evidence showing that GPO practices are materially different between the segments such that Mr. Yancy's observations and opinions are inapplicable to the consumables segment. For example, Mr. Yancy's observation that a GPO may have less incentive to bargain for the lowest possible price when it is are compensated based upon its members' total purchases seems to apply regardless of whether the product is a $10,000 ultrasound machine or $10,000 worth of syringes. To the extent BD's objection has merit, the Court finds that it is a matter best left to cross-examination.

2. BD contends that Mr. Yancy's proposed testimony is not based on sufficient facts and should be excluded because Mr. Yancy has not reviewed any documents in this case. As discussed above, Mr. Yancy proposes to offer general testimony regarding GPOs and their contracting practices, which is not specific to the documents and contracts at issue in this case. Although Mr. Yancy may not be permitted to offer individualized testimony regarding specific contracts introduced through other witnesses, the Court is persuaded that his generalized testimony is relevant to the evidence and issues to be considered by the jury. BD's objection does not merit excluding Mr. Yancy as a witness.

3. BD argues that Mr. Yancy's opinions are not supported by adequate facts because Mr. Yancy relies on articles that "are outside the relevant time period governing this lawsuit, and do not relate to BD, the products at issue, or the contracts at issue." (Mot. at 4.) BD explains that the parties entered a settlement and release of certain claims arising prior to July 2, 2004, and argues that various sources relied upon by Mr. Yancy, which describe events occurring prior to that date, should be excluded by operation of res judicata. (*Id.*) RTI argues that the articles referred to by BD are not the basis for Mr. Yancy's opinions, and are instead cited "for conceptual support." (Resp. at 7-8.) RTI concedes that even though "certain pre-2004 facts may be outside the scope of this lawsuit, there is no basis for arguing Mr. Yancy's opinions are improper because he cites to sources published prior to that date." (*Id.*)

The Court has not yet reached the merits of BD's res judicata defense. However, evidence that is arguably relevant to claims barred by res judicata is nevertheless admissible if such evidence is also relevant to any proper claims or defenses. For example, the report and study by the Government Accountability Office are relied upon by Mr. Yancy to substantiate his criticisms of certain GPO practices. Although the study and report were published before 2004,

Mr. Yancy apparently contends such practices continue to this day. Although this evidence may have been relevant to claims barred by res judicata, it cannot be said that this evidence is entirely irrelevant to any of the claims presently at issue. To the extent that any particular sources have no relevance to any of the claims found to be properly at issue in this case, BD may address those deficiencies on cross-examination, or if prejudice would result from the introduction of such evidence, by objecting at the time it is introduced.

4. BD objects to Mr. Yancy's opinions based upon "the notion of 'moral hazard' in principal-agent economic relationships" because Mr. Yancy is not an expert in economics. (Mot. at 6-7.) However, the discussion of the topic in Mr. Yancy's report is not at an abstract, theoretical level, and is instead an application of the concept as one would expect sophisticated business persons would apply in the ordinary course of managing their affairs. (*See* Yancy Rep. ¶¶ 15-17, Dkt. No. 169-1 (explaining hazards of GPOs receiving side payments from vendors while responsible for negotiating on behalf of its members).) Any deficiencies in Mr. Yancy's analysis are best addressed through cross-examination.

5. BD objects to Mr. Yancy's opinions on the grounds that they have not been subject to peer review or publication. (Mot. at 7.) RTI responds that there is no requirement that an expert's opinions be subject to peer review or publication in order to be admissible. (Resp. at 8.) The Court has reviewed Mr. Yancy's report and finds that his opinions are sufficiently reliable, and are not the sort of technical work that would be subject to peer review or publication.

## CONCLUSION

Having considered and overruled all of BD's objections to Mr. Yancy's opinions and proposed testimony, BD's Amended Motion to Exclude or Limit the Report and Testimony of Plaintiff's Expert James Robert "Bob" Yancy. (Dkt. No. 169) is **DENIED**.

**SIGNED this 16th day of April, 2013.**

_____
ROY S. PAYNE
UNITED STATES MAGISTRATE JUDGE