IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| RETRACTABLE TECHNOLOGIES, INC., et al., | § § § | |
| *Plaintiffs,* | § § | |
| v. | § § | Case No. 2:08-CV-16-LED-RSP |
| BECTON, DICKINSON AND CO., | § § § | |
| *Defendant.* | § § | |

## MEMORANDUM ORDER

Before the Court are the various motions in limine that were heard in Open Court during the Pretrial Conference on August 5, 2013. The following rulings are based on the reasons announced in Open Court as well as those stated herein following a review of the record, including all evidence, briefs and oral arguments of counsel.

(1) Defendant's "Renewed Motion In Limine Regarding the Status, Effect, and Inadmissibility of the Patent Infringement Allegations and Jury Verdict" in the Patent Case (Dkt. No. 420) (filed on April 26, 2013)

BD represents in its briefing that it sold, through 2009, 28 million of the 1mL Integra syringes that the jury found infringed RTI's patents and the Federal Circuit affirmed. RTI claims that these infringing syringes were poorly made and were kept on the market by BD to taint or disparage RTI's superior product in order to maintain the market dominance of BD's older and inferior syringe technology.

RTI originally filed both its current claims and its patent infringement claims in the same lawsuit. BD successfully moved to sever those claims for three reasons: (1) "different legal and factual issues;" (2) joint trial "would be confusing and burdensome for a single jury to address;"

1

and (3) to "facilitate the most efficient management of the parties' various disputes." (Case No. 2:07cv250, Dkt. No. 40 at 4). The only reference to possible prejudice was in a footnote asserting that "RTI may seek to present its antitrust and Lanham Act allegations in inflammatory terms," which could prejudice the patent defense, the opposite of the position BD is now asserting. *Id.* at 7, n.1.

This Court has already determined that the fact of BD's infringement of RTI's patent is relevant to RTI's antitrust claims. Dkt. No. 474. A final judgment is certainly the most efficient and least confusing evidence that can be offered to prove such a fact.[1] Since BD is the one who requested the severance, it should not now be heard to complain that a different jury has already decided the patent claims. Any concerns regarding double recovery can easily be addressed through the jury instructions.[2] The jury will know that RTI has already been compensated for the patent infringement through the judgment, which will lessen any tendency that might otherwise exist for overcompensation. The fact that the jury found that the infringement was not "willful" is of no consequence to the admissibility of the infringement, since the burden of proof for willfulness is much higher for infringement than for anticompetitive conduct generally.

Accordingly, the motion is DENIED.

(2) <u>Plaintiffs' Motions in Limine Concerning FDA Compliance and the Parties' Complaint Processes (Dkt. No. 423) (filed April 26, 2013)</u>

(A) The first section of this motion seeks to exclude any evidence by BD that its syringes have been approved by the Food and Drug Administration (FDA). RTI does not dispute that BD

---

[1] Rule 60(c)(2) makes clear that a motion under the rule "does not affect the judgment's finality." The appeal of such a motion *a fortiori* cannot either.

[2] BD does not and cannot offer any authority for its assertion that "no court has ever allowed evidence of patent infringement to go before a jury as the basis for an antitrust claim." (Dkt. No. 465 at 5)

obtained this approval, it merely argues that the particular level of approval involved is limited to determining that "a new device is no more dangerous than a device already on the market," rather than finding that it is actually "safe." RTI offers no authority suggesting that this limited approval is not admissible, instead arguing that the danger of jury confusion supports exclusion under Rule 403. The Court finds that the safety of the syringes is an issue in the case, that the FDA approval is relevant to that issue, and that the limitations of the process can easily be explained to the jury. Accordingly, the first section of the motion is DENIED.

(B) The second section of the motion seeks to exclude BD's evidence of a comparison of the relative rates of consumer complaints per unit sold between the BD syringes and the RTI syringes. This comparison is apparently focused upon needle stick incidents (NSI), the avoidance of which is one of the main benefits of RTI's patented syringes. RTI objects to this comparison because (1) the number of complaints made does not necessarily reflect the number of NSI actually occurring, (2) the complaint databases of RTI and BD, which are being compared, may not be compiled in the same ways, resulting in differences in reliability, and (3) BD has withheld a third party audit (the "QualityHub Audit") of its complaint database on grounds of privilege, which was upheld by this Court.

The first two grounds asserted by RTI are clearly matters appropriate for cross-examination rather than exclusion of the evidence. Indeed, RTI's own experts can effectively present these potential limitations on the value of the evidence. The evidence is clearly relevant and appears to be the best available evidence on the issue from each side. With respect to the QualityHub Audit, the time has long passed for RTI to challenge the ruling by Judge Folsom that it is privileged. Instead, RTI now argues that BD has waived that privilege by having its expert state that she has no reason to doubt the reliability of BD's database. RTI claims that this

constitutes an offensive use of the privileged audit, which it represents found serious flaws in the database. BD responds that it has not and will not refer to the audit in any way and has not made it available for review by any of its witnesses, including Dr. Jackson who is sponsoring the comparison of the databases.

The Court finds that there has been no waiver of the privilege that Judge Folsom found to attach to the audit. The cases primarily relied upon by RTI are inapposite. *U.S. v. Woodall*, 438 F.2d 1317 (5th Cir. 1971) (*en banc*), was a case where a criminal defendant filed an affidavit that his lawyer misled him as to the maximum sentence he would face upon pleading guilty. The affidavit detailed the conversation between the lawyer and the defendant. The Court found that this waived the privilege regarding the lawyer's testimony about the true nature of that conversation. The defendant was relying upon the privileged conversation (using it as a sword), and could not simultaneously use the privilege as a shield. Here, BD is relying upon the database, which is not privileged, rather than upon the audit, which is. Similarly, *Conkling v. Turner*, 883 F.2d 431 (5th Cir. 1989), dealt with a party whose affidavit as to conversations with his lawyer was found to have put the remaining material portions of those conversations at issue, thus waiving the privilege. It lends no support to RTI's waiver argument here. Accordingly, this motion is DENIED.

(3) <u>Defendant's Motion to Preclude Plaintiffs' Hearsay Evidence From RTI's Sales Calls Database (Dkt. No. 419) (filed April 26, 2013)</u>

BD seeks in this motion to exclude RTI's electronic sales call database ("Database") on grounds of hearsay. The Database is in the form of a large spreadsheet containing a variety of information about each sales call made by each RTI salesman on each customer from roughly

2000 through the present, amounting to over 200,000 entries. One of the fields in the Database contains customer statements as reported by the RTI salesmen.

The Court has little difficulty in concluding that the many fields of information entered into the Database by RTI salesmen and support staff are likely covered by the business records exception to the hearsay rule embodied in Rule 803(6). It is only "likely," rather than certain, because RTI will be required to lay the necessary foundation through testimony at trial. However, the following pertinent facts appear supported in the record so far: (1) the Database was maintained "at or near the time" of the sales calls, (2) by the salesmen, who were persons with knowledge, (3) in the course of their regular sales activity, (4) as part of the regular conduct of RTI's business. The occasional delays in entry of data are insignificant, and the presence of occasional errors is irrelevant. BD has certainly not made a sufficient showing to undermine the trustworthiness of the Database within the meaning of the hearsay rule. In other words, it is no more untrustworthy than broad range of business records generally. Thus, the delays and errors are fodder for cross-examination and rebuttal testimony.

To the extent that BD complains that the RTI salesmen had a motivation to exaggerate the obstacles to sales, in order to make their sales record look better, the drafters of Rule 803(6) noted that "absence of motive to misrepresent has not traditionally been a requirement of the rule; that records might be self-serving has not been a ground for exclusion." *Advisory Committee's Note*. Instead, the drafters rendered business records admissible "unless the source of information or the method or circumstances of preparation indicate a lack of trustworthiness." The motivations of the salesmen, which are common themes in business records, can properly be explored on cross-examination.

The real hearsay issue is whether the customer statements reported by the RTI salesmen are covered by a hearsay exception. RTI contends that the customer statements are not hearsay because they are not offered for the truth of the matter asserted (Rule 801(c)(2)) or, alternatively, are covered by the state of mind exception found in Rule 803(3). Whether a statement (here the customer statement) is offered for its truth or not depends on the fact issue to which it relates. In other words, if the fact of the utterance of the statement is all that matters, then we don't need the declarant (customer) to testify under oath before the jury and be subjected to cross-examination. All we need is the evidence from the salesman, which can be presented through the business record. In adopting the business records exception, Congress made the determination that business records are sufficiently reliable for the preparer (here the RTI salesman) to be exempted from testifying personally to all of the recorded facts. However, if the statement is only relevant if it's true, then we need the declarant to be under oath in front of the jury and subject to cross. In other words, it is a question of whose credibility is at issue, the salesman's or the customer's.

Similarly, the state of mind exception applies if the statement is relevant, not for its truth, but rather to show that it was made, which shows that it was believed. In other words, Congress has concluded through the state of mind exception that what a person says is a reliable indication of what the person believes. Thus, a listener (hear the RTI salesman) can prove the state of mind of the declarant (here the customer) by repeating the statement of belief, either through ordinary testimony or an applicable hearsay exception (here the business records exception). If what matters to the jury is not what the customer believed but rather whether the customer's belief was correct, then the state of mind exception does not apply. Rule 803(3) expressly provides that it does not include "a statement of memory or belief to prove the fact remembered or believed."

Neither of these determinations (truth vs. fact of utterance, or state of mind) can be made on a global basis for the 200,000 entries in the Database. Thus, the motion in limine will be DENIED, except as to the customer statements reported therein. The motion will be GRANTED as to the customer statements, and the parties are directed to identify to each other within five (5) days all customer statements sought to be admitted, and then to meet and confer before bringing those statements upon which they cannot agree to the Court on August 22, 2013.

**SIGNED this 12th day of August, 2013.**

_____
ROY S. PAYNE
UNITED STATES MAGISTRATE JUDGE