**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | | |
|---|---|---|
| RETRACTABLE TECHNOLOGIES, INC., et al., | § § § § § § § § § § § | |
| *Plaintiffs,* | | |
| v. | | Case No. 2:08-CV-16-LED-RSP |
| BECTON, DICKINSON AND CO., | | |
| *Defendant.* | | |

**MEMORANDUM ORDER**

Before the Court are the various motions in limine that were heard in Open Court during the Pretrial Conference on August 5, 2013. The following rulings are based on the reasons announced in Open Court as well as those stated herein following a review of the record, including all evidence, briefs and oral arguments of counsel.

(A) Plaintiffs' Motions In Limine (Dkt. No. 421) (filed on April 26, 2013)

(1) *Individual complaints or accidents reported in RTI's complaint database:* The Court will not exclude all reference to individual complaints without giving BD an opportunity to show that individual entries in the database are admissible under Rule 801 or 803, which will depend on the use to which BD intends to put them. This should be done in accordance with the procedure set forth in the ruling regarding RTI's sales call database.

(2) *OSHA approval:* this motion is denied for the same reasons provided in the ruling regarding FDA approval.

(3) *RTI advertising or bad conduct:* this motion is denied as overly vague and broad.

(4) *Tape recording of conversations by RTI employees:* this motion is granted under Rule 403 as the Court finds that the danger of unfair prejudice outweighs whatever marginal

relevance there might be to the fact that RTI employees recorded conversations without the knowledge of other participants. If defense counsel seek to use statements on any of the tapes as impeachment, then they should seek leave to approach the bench after the direct examination, unless counsel have already agreed upon a manner of using transcripts of the statements without disclosing the manner in which they were recorded.

(5) *RTI's efforts to persuade government agencies:* this motion is granted as the Court finds that the risk of unfair prejudice outweighs any marginal relevance. However, if RTI's efforts resulted in a government finding that meets the test of Rule 803(8), this ruling does not preclude BD from seeking admission of a document reflecting that finding.

(6) *RTI's propensity to sue:* this motion is denied as BD has shown that it is relevant to the cause of RTI's sales performance.

(7) *RTI's relationship with controversial foreign countries:* this motion is granted under Rule 403 as BD can accomplish its legitimate needs by referring to sales in the "rest of the world" without specifying Iran or Iraq or the like. Similarly, BD can refer to RTI's manufacturing capacity without specifying that the plant is in China.

(8) *Equitable defenses of waiver, estoppel, ratification, laches or unclean hands:* the Court finds that it is too late for RTI to raise issues concerning the adequacy of BD's pleading of these defenses, which RTI admits were raised in BD's answer long ago. However, both sides agree that these issues are properly tried to the bench. Thus, absent agreement between the parties, each side should approach the bench before offering evidence that relates solely to an equitable defense.

(9) *Consultations by RTI employees with counsel:* this motion is denied with respect to whether RTI's employees consulted counsel regarding a given issue and when, which are not

privileged matters, and which may be relevant to BD's equitable defenses. However, absent agreement that this evidence is relevant to non-equitable issues, BD should seek guidance from the Court out of the presence of the jury before offering such evidence. BD agrees that it may not inquire as to the contents of any communications between RTI employees and counsel.

(10) *"Personal relationships" of Thomas Shaw or other witnesses:* this motion is clearly too broad to simply grant. However, any evidence or argument concerning any affair between Thomas Shaw and his assistant, Nicki Hale, or the claim that she was hired to "distract" him from RTI's day-to-day business operations, will not be permitted absent leave of court sought out of the presence of the jury. The risk of unfair prejudice from such evidence appears, on the record as it exists now, to clearly outweigh the asserted relevance.

(11) *Royalty payments to Thomas Shaw by RTI for his patents:* this motion is denied as such payments do relate to Shaw's bias or interest as a witness for RTI. However, if BD elicits evidence, or makes arguments, about the actual amount of the past royalties then it will have opened the door for RTI to explain the source of the royalties, including the payments by BD and others.

(12) *Any employment-related claims of lawsuits against RTI or Shaw:* this motion is granted under Rule 403, except that if a witness has a claim pending against a party, or has resolved such a claim, then the fact of the claim is admissible as relevant to bias or interest. However, the underlying basis of the claim is not to be explored without agreement or leave of court.

(13) *Counsel's personal use of any product at issue:* this motion is granted by agreement.

(14) *Number of needles sold to Scripps memorial Hospital in 2009:* this motion is denied. If there is a mistake in RTI's records on this point, RTI may adduce evidence on that point, but BD is free to rely upon the records produced.

(15) *Dead space testing performed by Maxim or Covidien:* this motion is denied simply because RTI provides insufficient information for the Court to evaluate its arguments. Whether Maxim is a party or has provided a trial witness is not relevant to the admissibility of any tests, but whether the evidence that BD might offer concerning the tests is hearsay is critical. That issue will be resolved through any objections to the exhibits.

(B) <u>Defendant Becton, Dickinson and Company's Motions In Limine (Dkt. No. 426) (filed on April 26, 2013)</u>

(1) *Transcripts and tapes of television programs, book chapters and newspaper articles:* BD seeks to prevent RTI from introducing a portion of a CBS television broadcast of "60 Minutes" on grounds of hearsay and unfair prejudice. RTI asserts that the broadcast is offered to show BD's "involvement in the suppression of evidence" as opposed to the truth of the matter asserted. However, that inference is one of the matters asserted. Any relevant evidence in the broadcast is definitely outweighed by the risk of unfair prejudice.

The same holds true for the chapter on BD and the safety syringe market in the book "Cornered." RTI admits that the book, as originally published, contained significant false information about BD. While RTI contends that it wants the false information presented to the jury not for the truth but to show how BD coerced the publisher, the false information definitely tends to support RTI's claims. If RTI is permitted to introduce evidence that BD caused the publisher to withdraw the chapter, it would lead to a mini-trial about the defamation allegations

and why the publisher pulled the chapter. RTI indicated that the other items referred to in BD's motion will not be offered.

The Court finds that the hearsay uses of the evidence outweigh any relevance that the fact of the utterance may hold. Furthermore, the risk of unfair prejudice is significant. Accordingly, the motion is granted.

(2) *Alleged transmissions of hepatitis or HIV where there is no proof that a BD product was involved:* BD seeks to exclude evidence of health problems arising from reuse of needles or syringes where the evidence does not show that BD manufactured the devices. RTI is entitled to put on evidence of the general health risks underlying the product designs. The fact that some of the devices were not BD's does not result in unfair prejudice. The jury can easily be informed of BD's role in any specific cases or the lack thereof. The motion is denied.

(3) *1998 Survey of Accidental Needlesticks in 26 Facilities Using VanishPoint Automated Retraction Syringe:* This admissibility of this study will be addressed in the ruling on the *Daubert* challenge to the testimony of the study's author, Kathryn Duesman. Accordingly, the motion is deferred.

(4) *1964 Consent Decree:* BD seeks to exclude a Consent Decree entered into between BD and the United States in 1964 to resolve an antitrust claim. RTI contends that it is relevant to BD's "knowledge of its legal obligations, in addition to proving BD's motive and intent." The overwhelming effect of the evidence would be to portray BD as a repeat offender. Given the age of the decree, nearly a half century, the fact that it involves a very different alleged violation (a tying agreement), and the express language in the first paragraph of the decree ("without trial or adjudication of any issue of fact or law herein, and without admission by any party in respect to any such issue") it is simply not relevant to any fact at issue here. The motion is granted.

(5) *References to "kickbacks," "bribes," "side payments," and "payoffs":* BD argues that the terms "kickbacks" and "bribes" have legal meanings and therefore any testimony using those terms is improper opinion testimony. If the witnesses testify that certain transactions are subject to treatment as kickbacks or bribes under the law, then a proper objection may lie and can then be lodged. However, all of the terms also have general meanings within common parlance and RTI and its witnesses are entitled to the use of these terms, however evocative they may be. Any question about the propriety of the use can be effectively handled through cross-examination. This motion is denied.

(6) *BD's support for the International Healthcare Worker Safety Center:* BD seeks to exclude evidence concerning its financial support for Dr. Jagger and the International Healthcare Worker Safety Center. RTI counters that this financial support is relevant to show bias and interest in favor of BD in order to cast doubt on the reliability of the results of the research conducted by Jagger and the Center. Whether or not such evidence is persuasive, it is relevant and BD has not made a convincing showing of a risk of unfair prejudice. This motion is denied.

(7) *The July 2, 2004 settlement with BD and earlier settlements with other parties:* BD seeks to exclude evidence of RTI's 2004 settlement with BD of the earlier related antitrust action and the 2003 settlement of related claims against Premier, Novation and Tyco. Such settlements are inadmissible under Rule 408 to prove the validity or value of the underlying claims. RTI contends that it needs the evidence to show BD's intent and put its actions in context. None of the proposed uses of the settlements are persuasive, and they clearly do not outweigh the risk that the jury would unfairly conclude that they reflect the merit of the claims against BD in this action. However, BD could open the door to this evidence either by contending that RTI has slept on its rights (which would make the fact that it had sued BD and others relevant) or by

arguments concerning RTI's financial condition that fairly call for explanation through evidence of the large settlements. This motion is granted.

(8) *Healthcare Research and Development Institute ("HRDI") investigation:* HRDI is apparently an organization supported by BD and certain other healthcare supply manufacturers which was investigated by the states of Connecticut and Florida, as well as by a Congressional committee, for allegedly anticompetitive acts. BD complains that some of the evidence is hearsay and that it is also unfairly prejudicial. The record on this motion is inadequate to resolve the hearsay issues, but there is no persuasive support for a Rule 403 exclusion of the evidence. All of the points raised by BD can adequately be addressed through cross-examination. This motion is denied.

(9) *Equitable disgorgement and injunctive relief:* RTI states that it will not offer evidence of disgorgement but does intend to tell the jury that it is seeking injunctive relief from the Court. BD contends that since injunctive relief is tried to the court alone, and not to the jury, RTI should not be permitted to refer to the request for injunctive relief. RTI responds that it should be allowed to tell the jury that the monetary relief being sought from the jury is not the only relief sought, in order to answer BD's suggestion that RTI's claim is all about the money. BD has not offered any persuasive justification to bar any reference to injunctive relief. This motion is denied.

(10) *"Why can't it be zero?":* BD seeks to exclude evidence referring to BD's trademark, "Why can't it be zero?", because BD contends that the phrase is only used in connection with sales of products outside the U.S., which are not at issue in this case. RTI responds that it has evidence to the contrary. There is nothing inherently prejudicial about this evidence, so there is no need to handle it on an *in limine* basis. If RTI does not obtain pre-

admission of the exhibits it will need to lay an appropriate foundation at trial. These objections can be taken up with those regarding other exhibits. This motion is denied.

(11) *2004 META Solutions Audit:* BD hired META Solutions to conduct an audit of the clinical procedures used in certain clinical trials. BD represents that the trials did not involve the products at issue in this case, and thus the shortcomings found by the audit are irrelevant. RTI responds that the audit report implicates the type of studies submitted to the FDA for approval of the products at issue in the case, as well as the complaint handling system underlying the comparison of NSI rates that BD will offer. BD has not made a persuasive showing of unfair prejudice and RTI has established sufficient relevance. This motion is denied.

(12) *Communications with the FDA concerning the BD Flu+ syringe:* In 2009, BD sought FDA approval for a new syringe, the Flu+. BD seeks to exclude correspondence between the FDA and BD concerning that product, which is not at issue in this suit. RTI does not contend that the correspondence is not hearsay, but rather that it relates to BD's state of mind and knowledge that it should not have continued to use dead space or extra dose claims of the sort questioned by the FDA in the Flu+ correspondence. Clearly, the documents are far more likely to be seen by the jury as bearing upon the truth of the matter asserted in the correspondence than upon BD's state of mind. Accordingly, the motion is granted.

(13) *BD conduct and documents pre-dating July 2, 2004:* Both sides agree that RTI cannot rely upon conduct pre-dating the 2004 settlement to establish liability in this case. However, that does not mean that RTI cannot refer to events or documents in order to prove BD's liability for post-July 2, 2004 conduct. Application of this rule to specific exhibits will have to be done on a more focused basis than the record on this motion allows. This motion is denied.

- 9 -

(14) *Testimony from witnesses concerning legal conclusions and violation of law:* BD's arguments in this motion are asserted in greater detail in the *Daubert* motions concerning the same witnesses. Accordingly, this motion is deferred to the ruling on the *Daubert* motions.

**SIGNED this 14th day of August, 2013.**

_____
ROY S. PAYNE
UNITED STATES MAGISTRATE JUDGE