# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

| | |
|---|---|
| RETRACTABLE TECHNOLOGIES, INC., et al. § § § | |
| v. § § | Case No. 2:08-CV-16-LED-RSP |
| BECTON, DICKINSON AND CO. § § | |

## MEMORANDUM ORDER

Plaintiff Retractable Technologies, Inc. ("RTI") alleges violations of the Sherman and Clayton Acts, violations of the Texas Antitrust Act, false advertising in violation of the Lanham Act, product disparagement, tortious interference with prospective contract or business relations, and unfair competition by Defendant Becton, Dickinson and Company ("BD"). (Dkt. No. 73.) Before the Court is RTI's Motion to Limit the Testimony of Plaintiff's Expert Dr. Marguerite Jackson. (Dkt. No. 184, filed January 14, 2012.)

## APPLICABLE LAW

An expert witness may provide opinion testimony if "(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702.

Rule 702 requires a district court to make a preliminary determination, when requested, as to whether the requirements of the rule are satisfied with regard to a particular expert's proposed testimony. *See Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 149 (1999); *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 592-93 (1993). District courts are accorded broad

discretion in making Rule 702 determinations of admissibility. *Kumho Tire*, 526 U.S. at 152 ("the trial judge must have considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable"). Although the Fifth Circuit and other courts have identified various factors that the district court may consider in determining whether an expert's testimony should be admitted, the nature of the factors that are appropriate for the court to consider is dictated by the ultimate inquiry—whether the expert's testimony is sufficiently reliable and relevant to be helpful to the finder of fact and thus to warrant admission at trial. *United States v. Valencia*, 600 F.3d 389, 424 (5th Cir. 2010).

Importantly, in a jury trial setting, the Court's role under *Daubert* is not to weigh the expert testimony to the point of supplanting the jury's fact-finding role; instead, the Court's role is limited to that of a gatekeeper, ensuring that the evidence in dispute is at least sufficiently reliable and relevant to the issue before the jury that it is appropriate for the jury's consideration. *See Micro Chem., Inc. v. Lextron, Inc.*, 317 F.3d 1387, 1391-92 (Fed. Cir. 2003) (applying Fifth Circuit law) ("When, as here, the parties' experts rely on conflicting sets of facts, it is not the role of the trial court to evaluate the correctness of facts underlying one expert's testimony."); *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 249-50 (5th Cir. 2002) ("'[t]he trial court's role as gatekeeper [under Daubert] is not intended to serve as a replacement for the adversary system.' . . . Thus, while exercising its role as a gate-keeper, a trial court must take care not to transform a *Daubert* hearing into a trial on the merits," quoting Fed. R. Evid. 702 advisory committee note). As the Supreme Court explained in *Daubert*, 509 U.S. at 596, "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *See Mathis v. Exxon Corp.*, 302 F.3d 448, 461 (5th Cir. 2002).

# DISCUSSION

RTI objects to Dr. Jackson's proposed testimony on several grounds.

1. RTI objects to Dr. Jackson's calculations and charts on relevancy grounds, alleging that Dr. Jackson changed her testimony at the deposition. The Court disagrees. Dr. Jackson's conclusion, as stated in her report, was "that the BD safety-engineered hypodermics are, in fact, safe…" (Mot. at 4.) RTI does not dispute that safety is a relevant issue in this case. RTI's question at the deposition was very specific: Dr. Jackson was asked if she was making a comparative safety analysis of the BD and RTI products, to which she said no. (Jackson Depo. at 179:19-21.) RTI does not dispute that safety is relevant in this case, and provides no basis for its implicit proposition that Dr. Jackson's opinions are wholesale irrelevant because some portion of her analysis was not drawing a concrete conclusion on the comparative safety of BD and RTI products. There is no reason that RTI cannot question Dr. Jackson regarding the limits of her study, and whether the study properly shows comparative safety, on cross-examination. *Mathis v. Exxon Corp.*, 302 F.3d at 461.

2. RTI also objects to Dr. Jackson's proposed testimony because of her use of the allegedly flawed BD complaint system as a basis for calculating needle-stick injuries. (Mot. at 7-10.) RTI has proffered evidence to show that BD's complaint system had a "systematic problem" according to the FDA, as well as other evidence showing flaws in BD's complaint system, but sets forth no reason that these are not issues that can (and should) be addressed by a vigorous cross-examination of Dr. Jackson. To the extent BD takes issue with the bases for Dr. Jackson's opinions, those issues are best explored by vigorous cross-examination. *Mathis v. Exxon Corp.*, 302 F.3d at 461. To the extent RTI's objection lies in Dr. Jackson having not been presented with the QualityHub audit, the Court has already addressed and dismissed this objection in its Orders on the Parties' Motions in Limine. (*See* Dkt. No. 481 and 488.)

3. RTI also objects to Dr. Jackson's proposed testimony because she did not add numbers based on anecdotal reports for individual hospitals to her existing dataset (Mot. at 10-11) and because "she cannot attest to the reliability or origination of the data she used." (*Id*. at 11-12.) RTI presents no reason why a limited dataset renders Dr. Jackson's methodology unreliable. Similarly, RTI presents no reason why Dr. Jackson's inability to personally attest to the accuracy of the underlying dataset renders her methodology unreliable and notes that the proper avenue for RTI to challenge the limitations of the underlying data utilized by Dr. Jackson is through a vigorous cross examination. *Mathis v. Exxon Corp.*, 302 F.3d at 461.

4. RTI objects to Dr. Jackson's proposed testimony as "leav[ing] too great an analytical gap," alleging that Dr. Jackson's analysis of the change in needlestick rate from 1999 through early 2007 does not conclusively prove the cause of "44 NSIs in mid-2008." (Mot. at 13.) The Court is not persuaded, and notes that RTI is free to explore the limitations of the underlying data utilized by Dr. Jackson on cross examination. *Mathis v. Exxon Corp.*, 302 F.3d at 461.

5. Finally, RTI challenges Jackson's annual needle-stick estimates, alleging that Dr. Jackson's limited sample size and approximation of Massachusetts' number of healthcare workers render Dr. Jackson's testimony unreliable. (Mot. at 13-15.) RTI correctly notes that Dr. Jackson's report does contain a number of assumptions about proportion of healthcare workers and representativeness (e.g. "… I therefore assume that it has at least 5% of the nation's healthcare workers"), but these issues can be addressed and highlighted by a vigorous cross examination, and thus the Court finds that the jury is not likely to give Dr. Jackson's testimony undue weight.

## CONCLUSION

Having considered all of RTI's objections to Dr. Jackson's opinions and proposed testimony, BD's Motion to Limit the Testimony of Defendant's Expert Dr. Marguerite Jackson (Dkt. No. 184) is **DENIED**.

**SIGNED this 26th day of August, 2013.**

_____
ROY S. PAYNE
UNITED STATES MAGISTRATE JUDGE