IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| RETRACTABLE TECHNOLOGIES, INC., et al. | § § § § | |
| v. | § § | Case No. 2:08-CV-16-LED-RSP |
| BECTON, DICKINSON AND CO. | § § | |

**MEMORANDUM ORDER**

Plaintiff Retractable Technologies, Inc. ("RTI") alleges violations of the Sherman and Clayton Acts, violations of the Texas Antitrust Act, false advertising in violation of the Lanham Act, product disparagement, tortious interference with prospective contract or business relations, and unfair competition by Defendant Becton, Dickinson and Company ("BD"). (Dkt. No. 73.) Before the Court is BD's Motion to Limit the Testimony of Plaintiff's Expert Dr. William A. Hyman. (Dkt. No. 177, filed January 12, 2012.)

**APPLICABLE LAW**

An expert witness may provide opinion testimony if "(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702.

Rule 702 requires a district court to make a preliminary determination, when requested, as to whether the requirements of the rule are satisfied with regard to a particular expert's proposed testimony. *See Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 149 (1999); *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 592-93 (1993). District courts are accorded broad discretion in making Rule 702 determinations of admissibility. *Kumho Tire*, 526 U.S. at 152

("the trial judge must have considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable"). Although the Fifth Circuit and other courts have identified various factors that the district court may consider in determining whether an expert's testimony should be admitted, the nature of the factors that are appropriate for the court to consider is dictated by the ultimate inquiry—whether the expert's testimony is sufficiently reliable and relevant to be helpful to the finder of fact and thus to warrant admission at trial. *United States v. Valencia*, 600 F.3d 389, 424 (5th Cir. 2010).

Importantly, in a jury trial setting, the Court's role under *Daubert* is not to weigh the expert testimony to the point of supplanting the jury's fact-finding role; instead, the Court's role is limited to that of a gatekeeper, ensuring that the evidence in dispute is at least sufficiently reliable and relevant to the issue before the jury that it is appropriate for the jury's consideration. *See Micro Chem., Inc. v. Lextron, Inc.*, 317 F.3d 1387, 1391-92 (Fed. Cir. 2003) (applying Fifth Circuit law) ("When, as here, the parties' experts rely on conflicting sets of facts, it is not the role of the trial court to evaluate the correctness of facts underlying one expert's testimony."); *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 249-50 (5th Cir. 2002) ("'[t]he trial court's role as gatekeeper [under Daubert] is not intended to serve as a replacement for the adversary system.' . . . Thus, while exercising its role as a gate-keeper, a trial court must take care not to transform a *Daubert* hearing into a trial on the merits," quoting Fed. R. Evid. 702 advisory committee note). As the Supreme Court explained in *Daubert*, 509 U.S. at 596, "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *See Mathis v. Exxon Corp.*, 302 F.3d 448, 461 (5th Cir. 2002).

## DISCUSSION

BD objects to Dr. Hyman's proposed testimony on several grounds.

1. BD objects to Dr. Hyman's proposed testimony on dead space because he "failed to perform independent dead space testing or verify the accuracy of RTI's dead space numbers." (Mot. at 6.) BD's arguments are based primarily on the fact the Dr. Hyman did not *personally* conduct the experiments on which his opinions are based, but BD sets forth no reason that this Court should utilize that fact as a basis for exclusion. To the extent BD takes issue with the bases for Dr. Hyman's opinions, those issues are best explored by vigorous cross-examination. *Mathis v. Exxon Corp.*, 302 F.3d at 461.

2. BD objects to Dr. Hyman's proposed testimony on in-patient retraction because he has "never 'used a syringe to give an actual injection to a person'" and has "never observed an in-patient retraction." (Mot. at 7.) Again, BD sets forth no reason that this Court should utilize the stated facts as a basis for exclusion; BD's rationale bears no basis in the well-established law on the qualification of expert witnesses. To the extent BD takes issue with the bases for Dr. Hyman's opinions, those issues are best explored by vigorous cross-examination. *Mathis v. Exxon Corp.*, 302 F.3d at 461.

3. BD objects to Dr. Hyman's proposed testimony on needle sharpness because he has "not 'performed any sharpness tests for this case.'" (Mot. at 6.) BD's arguments are based primarily on the fact the Dr. Hyman did not *personally* conduct the experiments on which his opinions are based, but BD sets forth no reason that this Court should utilize that fact as a basis for exclusion. To the extent BD takes issue with the bases for Dr. Hyman's opinions, those issues are best explored by vigorous cross-examination. *Mathis v. Exxon Corp.*, 302 F.3d at 461.

4. BD objects to Dr. Hyman's proposed testimony on ease of use on two grounds. BD first alleges that Dr. Hyman is unqualified because "nothing in his background qualifies him

to opine on what 'real world clinical practice involves." This Court disagrees. As RTI notes, Dr. Hyman has extensive teaching experience in clinical biomedical engineering. (See, e.g., Dkt. 237 at 1-3). BD also objects to Dr. Hyman's ease of use testimony because he did not "conduct[] clinical studies." (Mot. at 10.) BD's arguments are based primarily on the fact the Dr. Hyman did not *personally* conduct the experiments on which his opinions are based, but BD sets forth no reason that this Court should utilize that fact as a basis for exclusion. To the extent BD takes issue with the bases for Dr. Hyman's opinions, those issues are best explored by vigorous cross-examination. *Mathis v. Exxon Corp.*, 302 F.3d at 461.

5.  BD objects to Dr. Hyman's proposed testimony on human factors and safety. (Mot. at 11.) BD argues that Dr. Hyman fails "to provide factual support for his opinions," and continues on to cite several reports and articles cited by Dr. Hyman as examples of studies with the appropriate scientific rigor. However, a review of Dr. Hyman's opinion shows that his general human factors analysis has substantial factual basis (*see* Hyman Rpt. at 50-59.) To the extent BD takes issue with the bases for Dr. Hyman's opinions, those issues are best explored by vigorous cross-examination. *Mathis v. Exxon Corp.*, 302 F.3d at 461.

6.  In its Reply in Support of its Motion, BD raises several new grounds of objection, including allegations that Dr. Hyman is unqualified as an expert to offer opinions on deadspace, needle sharpness, and in-patient retraction. The Court will address these grounds despite its general prohibition on raising new matter in a reply.[1] BD sets forth objections similar to the ones set forth above, alleging that Dr. Hyman has not taught a class narrowly tailored to a given subject, performed a single extremely specific laboratory test, or several other remarkably narrow qualifications that it alleges would be necessary to qualify as an expert. As noted above,

---

[1] The Court notes, however, that it is telling that BD did not raise these issues in its initial Motion.

- 4 -

the Court finds no basis for BD's objections, and finds that Dr. Hyman's extensive experience qualifies him as an expert in for the purpose for which he is offered here.

## CONCLUSION

Having considered all of BD's objections to Dr. Hyman's opinions and proposed testimony, BD's Motion to Limit the Testimony of Plaintiff's Expert Dr. William Hyman (Dkt. No. 177) is **DENIED**.

**SIGNED this 26th day of August, 2013.**

_____
ROY S. PAYNE
UNITED STATES MAGISTRATE JUDGE