IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| RETRACTABLE TECHNOLOGIES, INC., et al. | § § § § |
| v. | § Case No. 2:08-CV-16-LED-RSP § |
| BECTON, DICKINSON AND CO. | § § |

**MEMORANDUM ORDER**

Plaintiff Retractable Technologies, Inc. ("RTI") alleges violations of the Sherman and Clayton Acts, violations of the Texas Antitrust Act, false advertising in violation of the Lanham Act, product disparagement, tortious interference with prospective contract or business relations, and unfair competition by Defendant Becton, Dickinson and Company ("BD"). (Dkt. No. 73.) Before the Court is BD's Motion to Limit the Testimony of Plaintiff's Expert Neil Sheehan. (Dkt. No. 166, filed January 10, 2012.)

**APPLICABLE LAW**

An expert witness may provide opinion testimony if "(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702.

Rule 702 requires a district court to make a preliminary determination, when requested, as to whether the requirements of the rule are satisfied with regard to a particular expert's proposed testimony. *See Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 149 (1999); *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 592-93 (1993). District courts are accorded broad discretion in making Rule 702 determinations of admissibility. *Kumho Tire*, 526 U.S. at 152

("the trial judge must have considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable"). Although the Fifth Circuit and other courts have identified various factors that the district court may consider in determining whether an expert's testimony should be admitted, the nature of the factors that are appropriate for the court to consider is dictated by the ultimate inquiry—whether the expert's testimony is sufficiently reliable and relevant to be helpful to the finder of fact and thus to warrant admission at trial. *United States v. Valencia*, 600 F.3d 389, 424 (5th Cir. 2010).

Importantly, in a jury trial setting, the Court's role under *Daubert* is not to weigh the expert testimony to the point of supplanting the jury's fact-finding role; instead, the Court's role is limited to that of a gatekeeper, ensuring that the evidence in dispute is at least sufficiently reliable and relevant to the issue before the jury that it is appropriate for the jury's consideration. *See Micro Chem., Inc. v. Lextron, Inc.*, 317 F.3d 1387, 1391-92 (Fed. Cir. 2003) (applying Fifth Circuit law) ("When, as here, the parties' experts rely on conflicting sets of facts, it is not the role of the trial court to evaluate the correctness of facts underlying one expert's testimony."); *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 249-50 (5th Cir. 2002) ("'[t]he trial court's role as gatekeeper [under Daubert] is not intended to serve as a replacement for the adversary system.' . . . Thus, while exercising its role as a gate-keeper, a trial court must take care not to transform a *Daubert* hearing into a trial on the merits," quoting Fed. R. Evid. 702 advisory committee note). As the Supreme Court explained in *Daubert*, 509 U.S. at 596, "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *See Mathis v. Exxon Corp.*, 302 F.3d 448, 461 (5th Cir. 2002).

## DISCUSSION

BD objects to Mr. Sheehan's proposed testimony on several grounds.

1. BD purports to object to Mr. Sheehan's opinions on BD's complaint systems and regulatory compliance. BD broadly asserts that Mr. Sheehan is attempting to testify as to BD's "general approach to regulatory and compliance matters." (Mot. at 3-5.) Mr. Sheehan's opinions, however, appear to address, among other things, whether BD's system is "an effective complaint system that accurately measure[s] the frequency of occurrences as compared to the true frequency of actual clinician complaints." (*See, e.g.*, Dkt. 213 at 3-6.) While some of Mr. Sheehan's opinions appear to utilize FDA regulations as at least a partial justification, the substance of Mr. Sheehan's testimony appears targeted toward the engineering aspects of BD's complaint system and products. (*Id.*) Further, even if Mr. Sheehan's testimony did touch on the regulatory aspects of BD's complaint system and products, it is undisputed that Mr. Sheehan has worked in at least one position where he had responsibility for regulatory compliance, and that he was primarily responsible for building his own company's complaint system. (*Id.*) BD argues that in his prior position, Mr. Sheehan utilized outside regulatory consultants, and that this fact somehow disqualifies him from serving as an expert as to BD's complaint system. (Mot. at 4; Dkt. 225 at 2.) This position is simply untenable, and would serve to disqualify any person who has ever sought outside counsel on a given issue – a practice which is routine for supervisors and executives, even ones with a great deal of knowledge and experience. To the extent BD takes issue with Mr. Sheehan's qualifications, the Court finds his qualifications are adequate and those issues are best explored by vigorous cross-examination. *Mathis v. Exxon Corp.*, 302 F.3d at 461.

2. BD objects to Mr. Sheehan's opinions relating to the risk of needle "pop off." BD alleges that Mr. Sheehan has no scientific basis for his testimony, and identifies a number of tests

that they allege that Mr. Sheehan should have conducted himself. (Mot. at 5-6.) The Court notes that despite BD's assertion that Mr. Sheehan's opinions are without basis, RTI correctly points out numerous documents on which Mr. Sheehan's opinions are based. (*See, e.g*., Dkt. 213 at 6-7; Dkt. 235 at 3.) To the extent BD's arguments are based on the fact the Mr. Sheehan did not *personally* conduct the experiments on which his opinions are based, BD sets forth no reason that this Court should utilize that fact as a basis for exclusion. To the extent BD takes issue with the bases for Mr. Sheehan's opinions, those issues are best explored by vigorous cross-examination. *Mathis v. Exxon Corp.*, 302 F.3d at 461.

3. BD objects to Mr. Sheehan's speculation regarding BD's motivations. BD alleges that Mr. Sheehan intends to testify to the mental state of BD regarding changeable versus fixed needles. (Mot. at 8-10.) Mr. Sheehan stated that "… [t]hese features were dictated to BD's engineers, most likely for marketing or financial reasons." (Sheehan Dec. at par. 32.) However, RTI contends that Mr. Sheehan "does not intend to testify regarding the mental state of anyone at BD, but rather discusses the presence or lack of a sound engineering basis for a particular design or changes to a particular design." (Dkt. 213 at 9-10.) Based on RTI's assertion, the Court concludes that this issue, if it does arise, can easily and without undue prejudice be handled at trial. The Court also notes that although BD jabs at Mr. Sheehan's qualifications with regard to the above opinions, BD has failed to set forth any substantive argument on that point. Thus, those issues are best explored by vigorous cross-examination. *Mathis v. Exxon Corp.*, 302 F.3d at 461.

4. BD objects to Mr. Sheehan's opinions regarding RTI's Patient Safe design. The Court finds that Mr. Sheehan's opinions on this matter cover areas within his expertise as an engineer, and it is clear that he has a scientific basis for these opinions. (*See, e.g*., Dkt. 213 at

12-14.)  To the extent BD takes issue with Mr. Sheehan's qualifications, those issues are best explored by vigorous cross-examination.  *Mathis v. Exxon Corp.*, 302 F.3d at 461.

5. BD purports to challenge Mr. Sheehan's statements regarding patent issues, but admits that it has not briefed them in the context of this Motion.  (Mot. at 12.)  Thus, the Court denies BD's unsupported challenge.

## CONCLUSION

BD's Motion to Limit the Testimony of Plaintiff's Expert Neil Sheehan (Dkt. No. 166) is **DENIED**.

**SIGNED this 26th day of August, 2013.**

_____
ROY S. PAYNE
UNITED STATES MAGISTRATE JUDGE