IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| RETRACTABLE TECHNOLOGIES, INC. AND THOMAS J. SHAW, | § § § | |
| Plaintiffs, | § § | CIVIL ACTION NO. 2:08-cv-16 |
| v. | § § § | _____ |
| BECTON, DICKINSON AND COMPANY, | § § | **JURY TRIAL DEMANDED** |
| Defendant. | § § § | |

**DEFENDANT BECTON, DICKINSON AND COMPANY'S**
**REPLY IN SUPPORT OF MOTION TO SEAL CERTAIN TRIAL EXHIBITS**

Defendant Becton, Dickinson and Company ("BD") has moved to seal certain trial exhibits (Dkt. No. 585), which contain and relate to confidential business information that could, if disclosed, be used by competitors to gain an unfair advantage or would reveal customer confidences.  Plaintiffs too moved to seal certain trial exhibits on the same grounds; yet they would have this Court deny BD the same protection they seek for themselves.

Plaintiffs raise no legitimate basis for opposing BD's motion and identify no factors that weigh in favor of unlimited access and against protection of highly confidential information.  "Every court has supervisory power over its own records and files, and access has been denied where court files might have become a vehicle for improper purposes." *Nixon v. Warner Communications*, 435 U.S. 589, 598 (1978).  Competitors do not, in the ordinary course, have the opportunity or the right to rifle through a competitor's internal documents to study and exploit its business plans and strategies, product design and analysis, its customer communications and information, and internal decision making.  BD's motion to seal is warranted to protect against this very abuse.

As initial matter, by way of some selective statistics, Plaintiffs erroneously suggest that BD is attempting to seal virtually all trial exhibits.  (Dkt. No. 596 ("Pls. Opp.") at 2.)  In fact, BD has moved to seal less than half of the trial exhibits, far from the 86% and 91% figures bandied about by Plaintiffs.  Plaintiffs also neglect to account for the fact that the majority of documents BD has moved to seal are from Plaintiffs' trial exhibit list.  Plaintiffs, not BD, selected to use a disproportionate number of confidential and/or internal BD documents that are subject to the Protective Order in this case.  The Court should not permit RTI to use its decision to list those documents as trial exhibits to make an end run around the Protective Order to which RTI agreed and pursuant to which BD produced those documents.  In any event, it is not the number of

exhibits at issue but the content that is relevant to determining whether sealing is appropriate.

"[T]he decision as to access is one best left to the sound discretion of the trial court, a discretion to be exercised in light of the relevant facts and circumstances of the particular case." *Nixon*, 435 U.S. at 599.  Plaintiffs object to BD's motion primarily on two grounds: first, that certain exhibits were used during the trial in open court; and second, that certain exhibits were created in earlier time periods and/or relate to products no longer available.  In both cases, Plaintiffs incorrectly contend that no harm will result from disclosure.  Plaintiffs' first argument is bad policy, and their second argument is factually wrong.  Neither should preclude the Court from exercising its discretion by granting BD's motion to seal.

## I.    BD Has Not Waived Confidentiality

Plaintiffs argue that, because some of the exhibits BD has moved to seal were used at trial, BD has effectively waived confidentiality.  (Pls. Opp. at 4.)  Plaintiffs extend the same reasoning to all pre-admitted exhibits.  (*Id.*)  The entire premise of Plaintiffs' argument is unfounded:  a party need not move to seal the courtroom during trial as a prerequisite to later moving to seal certain trial exhibits, Plaintiffs cite no authority to the contrary, and that has not been the practice here in the Eastern District of Texas.  This Court entered an order prior to trial regarding the sealing of exhibits.  (Dkt. No. 477).  Instead of requiring parties and the Court to expend the resources litigating over sealing documents that might ultimately never be used, the Court directed that any motions to seal exhibits presented at trial be filed shortly *after* trial.  (Dkt. No. 477).  The order was not conditioned on the courtroom having been sealed.

Indeed, such a policy would have been completely at odds with the underlying rule favoring public access.  While sealing a courtroom is an extreme remedy that completely denies the public access, sealing selected exhibits is a far more narrowly tailored approach that properly balances the right of access against the interest in nondisclosure of confidential information.

This procedure also recognizes the practical distinction, which Plaintiffs ignore, between briefly showing a portion of a document in court during trial with making entire voluminous exhibits permanently available for use by anyone for any purpose.  All of the trial transcripts and many of the exhibits will remain available thus guaranteeing the public right of access to the trial record.  Disclosure of the exhibits BD has moved to seal will not materially enhance that record, but will prejudice BD by unnecessarily revealing substantial amounts of confidential information.

Ironically, Plaintiffs' objections to BD's motion apply equally to their own motion to seal.  Virtually all of the exhibits Plaintiffs have moved to seal were pre-admitted and several were used in open court (PX570, DX59, DX84, DX1171, DX1599, DX1661).   Like BD, Plaintiffs made no attempt to seal the courtroom during trial.  That BD did not oppose Plaintiffs' motion does not justify application of an entirely different standard.  Plaintiffs do not even attempt to explain why, if their objections are valid, their motion should not also be denied.[1]

## II.    The Exhibits BD Has Moved to Seal Contain Relevant Confidential Information

Plaintiffs also object to documents they label as "older" and to documents which they assert concern products other than BD's current offerings.  The date of a document alone, or that a portion of a document relates to products no longer sold and/or to RTI, does not mean that the document does not contain confidential information.  First, many of the documents at issue are forward-looking, and contain information about strategies that go beyond the date of the document.  Second, because the relevant agreements and pricing extend for several years, and terms and conditions have remained fairly constant over time, the date on a document is not indicative of the sensitivity and confidentiality of the information it contains.  Third, because the products have remained largely the same over the last several years, strategies and competitive

---

[1] BD moved to seal DX6004, the Third Amended Complaint filed in prior litigation between the parties, which it mistakenly believed had previously been sealed.  Because it was not, BD withdraws DX6004 from its motion.

analysis has also remained relevant and generally consistent.  And finally, that certain documents relate in part to products removed from the market does not make the information about that product or information in certain of those documents about other products any less confidential. Similarly, that a document discusses RTI does not mean that it does not contain BD's confidential testing protocols, marketing strategy, or other proprietary information.  Plaintiffs' classification of documents as "current" as opposed to "non-current" simply does not hold. Indeed, at trial, Plaintiffs espoused the opposite view, often relying on earlier documents, projections, and strategies to attempt to establish BD's current and future conduct and strategy. It is not particularly relevant or telling when the document was created or whether the product discussed is currently offered, but rather whether the information and analysis contained therein reveals confidential business information that a competitor could apply to today's market.

Plaintiffs agree that exhibits relating to contracts, financial data, product complaints, customer contacts and confidential government filings should be sealed and, like BD, have moved to seal such exhibits.  (Pls. Opp. at 1-2.)  However, as summarized below, many of the exhibits as to which they oppose sealing contain this same type of information.  Also, the bulk of exhibits to which Plaintiffs object to sealing are internal BD strategy documents, presentations and reports.  RTI does not typically generate these types of documents and thus has nothing to lose by opposing sealing these documents.  It does, however, stand to gain if it has unfettered access and ability to use BD's internal business documents regarding its competing products.

Plaintiffs oppose sealing the following exhibits which they categorize as relating to products no longer offered, relating to RTI, and/or non-current plans or communications.  But Plaintiffs ignore their contents.  As illustrated below, these exhibits should also be sealed.

- Contracting/Pricing (PX144, PX302, PX321, PX323, PX548).  These exhibits include information about BD's confidential contract terms and pricing.  The contracting parties

expect that the terms and prices will remain confidential.  Just as the contracts themselves (including those that have expired) should be sealed, which the parties do not dispute, so should documents containing information concerning those same contracts.

- Third Party (HPIS) Data (PX329, PX344, PX1190).  These documents contain and/or are based on confidential data from HPIS, which provides reports on healthcare product sales.  The data's use is restricted and cannot be redistributed.  Plaintiffs do not oppose sealing the confidential data from HPIS (DX2155) and these documents should similarly be sealed.

- Business Plans/Strategy/Manufacturing (PX255, PX256, PX267, PX271, PX289, PX560, PX572, PX717, PX763, PX820, PX831, PX946, PX1135, PX1139, PX1191, PX1192, DX4022).  These documents include business, marketing and contracting strategies and plans, some of which contain future projections (*see, e.g.*, PX560 at 9; PX717 at 2-3).  They discuss current BD products, sales strategies, manufacturing capabilities, including capacity, future expansion, resource allocation, and costs, and analysis of the product markets.  In addition, several of these documents include market share information sourced to HPIS.

- Testing (PX614, PX616, PX617, PX619, PX624, PX628, PX924, PX925, DX1635, DX1792, DX1795, DX1826, DX6000).  These documents discuss BD's proprietary testing protocols and designs as well as proprietary information about BD's needles (*see, e.g.*, DX1635 at 8, discussing BOLIS testing machine; PX616 at 4 discussing needle geometry).  Plaintiffs similarly moved to seal testing documents, including ones dating back to 2002 (PX570).

- 3 mL Integra Redesign (PX711, PX815, PX821, PX823, PX824, PX829, PX853, PX856, PX857, PX862, PX835, PX873).  These documents contain confidential, proprietary information about a current product.  They include market analysis, strategy, product designs, financial and manufacturing information, and product complaints.  Contrary to Plaintiffs' claims, some of the design and process changes were implemented.  While some were not, that is no reason to allow competitors to appropriate and exploit BD's analyses and R&D.

- Audits (PX976, PX977, PX991, PX994, PX1222, PX1224).  These exhibits contain sensitive and confidential information about BD's compliance and regulatory controls and procedures.

- BD's Customers (DX1801, DX1803, DX2112, DX3325, PX58, PX112, PX142, PX143, PX 277, PX 277B, PX562, PX568, PX638, PX818, PX827, PX957, PX971, PX998,).  These documents pertain to particular BD customers and include internal BD documents and communications with customers.  Customer identities and information should be protected.  Additionally, the documents contain pricing, contract terms and reflect marketing strategy.

- Product Training and Marketing (DX1838, DX3494, PX565, PX637, PX641, PX696, PX697, PX698, PX713, PX719, PX735, PX783, PX793, PX796, PX826, PX895, PX920, PX1032, PX1140, PX1223).  These exhibits consist of internal BD analysis and evaluation regarding how to market and price its current products.  Providing access would give an unfair edge to BD's competitors.

### III. Conclusion

For the foregoing reasons and the reasons stated in its Motion to Seal, BD's Motion to

Seal Certain Trial Exhibits should be granted in its entirety.

Dated: October 31, 2013          Respectfully submitted,

/s/  Sam Baxter
Samuel F. Baxter
Texas Bar No. 01938000
MCKOOL SMITH, P.C.
104 East Houston, Suite 300
Marshall, TX 75670
Telephone:  (903) 923-9000
Facsimile:  (903) 923-9099
E-mail:  sbaxter@mckoolsmith.com

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP
Robert A. Atkins, Lead Attorney
1285 Avenue of the Americas
New York, New York  10019-6064
Telephone:  (212) 373-3000
Facsimile:  (212) 757-3990
E-mail: ratkins@paulweiss.com

BECK REDDEN, L.L.P.
Alistair B. Dawson
Texas Bar No. 05596100
One Houston Center
1221 McKinney, Suite 4500
Houston, Texas  77010-2010
Telephone:  (713) 951-6225
Facsimile:  (713) 951-3720
E-mail:  adawson@brsfirm.com

MERCY, CARTER, TIDWELL, L.L.P.
W. David Carter
Texas Bar No. 03932780
1724 Galleria Oaks Drive
Texarkana, Texas  75503
Telephone:  (903) 794-9419
Facsimile:  (903) 794-1268
E-mail:  wdcarter@texarkanalawyers.com

*Attorneys for Defendant*
*Becton, Dickinson and Company*

6

<u>CERTIFICATE OF SERVICE</u>

I, Eric B. Halper, certify that the foregoing was filed electronically in compliance with Local Rule CV-5(a).  Therefore, this document was served on all counsel who are deemed to have consented to electronic service.  Local Rule CV-5(a)(3)(A).

*/s/ Eric B. Halper*
Eric B. Halper
