IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| RETRACTABLE TECHNOLOGIES, INC. AND THOMAS J. SHAW, § § § | | |
| Plaintiffs, § § | CIVIL ACTION NO. 2:08-cv-16-LED-RSP | |
| v. § § | _____ | |
| BECTON, DICKINSON AND COMPANY, § § | **JURY TRIAL** | |
| Defendant. § | | |

**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION FOR LEAVE TO FILE BRIEF ADDRESSING SUPPLEMENTAL AUTHORITY IN SUPPORT OF ITS RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW**

RTI opposes BD's request to file yet more briefing on its motion for judgment as a matter of law.  While RTI has no issue with the submission of the case (although it is not binding and, given the vastly different facts and procedural posture, is not even persuasive authority), RTI believes that additional briefing at this stage (138 pages of post-trial briefing have already been submitted on BD's JMOL alone) is unnecessary.

If the Court agrees, it need read no further.

If the Court would like a response to each of BD's points and mischaracterizations, RTI will provide it.

If the Court would like a brief statement (rather than a point-by-point rebuttal) as to why the *Eisai* decision does not alter the analysis here:  the simplest reason the *Eisai* opinion has no bearing here is that Eisai did not come forward with proof that the alleged deceptive conduct caused market-wide harm.  The alleged deception received very little analysis in the 90-page memorandum, and what discussion there was made clear that the facts of our case are significantly different.  *See* Eisai Memorandum Opinion pp. 22-25 ("Alleged Deception by

1

Sanofi Sales Representatives") & pp. 86-90 (analysis beginning with "One final issue that the Court must consider is the impact of Sanofi's marketing practices on Eisai's claims.").[1] Eisai did not present evidence showing market-wide harm. *Eisai* Memo. Op. pp. 89-90 ("Eisai has not presented testimony to the contrary"). Here, there was not only proof of the various ways BD deceived the market so as to retard material progress and slow innovation, but there was also significant proof of market-wide harm to competition resulting from that deception. *E.g.*, Plaintiffs' Motion for Judgment (Dkt. 590) Ex. A Plaintiffs' Proposed Findings of Fact and Conclusions of Law ¶¶ 99-156 (discussing BD's deceptive conduct and the market-wide, anticompetitive harm it caused); Plaintiffs' Response to BD's JMOL (Dkt 599) pp. 6-12 (detailing BD's anticompetitive conduct) pp. 32-37 (detailing how BD injured RTI and competition).[2] Contrary to BD's mantra that deception can never be an antitrust violation, the *Eisai* memorandum opinion is clear that "The Third Circuit explained recently that defamatory statements, 'which plainly [are] not competition on the merits, can give rise to antitrust liability, especially when [they are] combined with other anticompetitive acts.' W. Penn, 627 F.3d at 109 n.14." *Eisai* Memo. Op. pp. 88-89. Indeed, the *Eisai* court makes no mention of the 6 factors BD believes are so critical. While the *Eisai* court did not find that the facts supported the claim under the facts Eisai presented, that has no bearing here, where there are undisputed facts demonstrating that BD's deception injured the market and RTI.

---

[1] The bulk of the opinion is directed at that court's view of the market share contracts. There are various differences in the facts on this point as well, and RTI does not believe the same result would occur under the facts it presented.

[2] This was summarized in Plaintiffs' Response to BD's JMOL (Dkt. 599): "BD's anticompetitive conduct includes: (1) withholding and suppressing information about its own products, (2) spreading deceptive information about medication wastage and needle sharpness, (3) using deceptive contracts that kept the market from seriously considering retracting syringes, and (4) tainting the market with its poorly performing Integra syringes (including infringing RTI's patents to put its 1cc Integra on the market). . . . The following anticompetitive harms resulted from BD's conduct: (1) reduced market-wide quality, (2) reduced innovation and material progress, (3) increased prices, (4) raised rivals' costs, (5) raised buyers' switching costs, (6) distorted buyer choice, and (7) reduced output." pp. 2-3 (footnotes omitted).

Date: April 22, 2014  Respectfully submitted,

/s/ Roy W. Hardin
Roy W. Hardin
Texas Bar No. 08968300
Stephen D. Wilson
Texas Bar No. 24003187
Paul F. Schuster
Texas Bar No. 00784931
Mark R. Backofen
Texas Bar No. 24031838
Jeffrey B. Mead
Texas Bar No. 24057997
Susan E. Adams
Texas Bar No. 24059354
Ellen Peeples
Texas Bar No. 24066797
LOCKE LORD, LLP
2200 Ross Avenue, Suite 2200
Dallas, Texas 75201-6776
Telephone: (214) 740-8000
Facsimile: (214) 740-8800
E-mail: rhardin@lockelord.com

Otis Carroll
State Bar No. 03895700
Deborah Race
State Bar No. 16448700
IRELAND, CARROLL & KELLEY, PC
6101 S. Broadway, Suite 500
Tyler, Texas 75703
Telephone: (903) 561-1600
Facsimile: (903) 581-1071
Email: ncrim@icklaw.com

G. William Lavender
State Bar No. 11999590
Lavender Law
210 N. State Line Ave., Suite 503
Texarkana, Arkansas 71854
Telephone: (870) 773-3187
Facsimile: (870) 773-3181
E-mail: blav@lavenderlaw.com

Jim Parsons
State Bar No. 00000065
Jim Parsons Law Offices

3

1007 N. Mallard St.
Palestine, Texas 75801
Telephone: (903) 723-0580
Facsimile: (903) 723-0580
E-mail: jparsons@jimparsons-law.com

Monty L. Ross
Texas Bar No. 17297300
Ross Barnes LLP
801 E. Campbell Road, Suite 390
Richardson, Texas 75081
Telephone: 214.420.2300
Facsimile: 214.420.2299
Email: mross@rossbarneslaw.com

ATTORNEYS FOR PLAINTIFFS
RETRACTABLE TECHNOLOGIES, INC.
AND THOMAS J. SHAW

## CERTIFICATE OF SERVICE

    The undersigned hereby certifies that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3).

/s/ Roy W. Hardin